### The SICO FOUNDATION
v.
### The UNITED STATES.
No. 338-57.

United States Court of Claims.
Jan. 12, 1962.

For original opinion see 295 F.2d 924.

Fleming Bomar, Washington, D. C., for plaintiff. Ivins, Phillips & Barker, Washington, D. C., were on the briefs.

Joel N. Simon, Silver Spring, Md., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Philip R. Miller, Washington, D. C., was on the briefs.

PER CURIAM.

For the reasons stated in the previous opinion, the majority of the court feels that the motion for rehearing herein should be overruled.

It is so ordered.

JONES, Chief Judge, whom DURFEE, Judge, joins, dissenting:

We think the majority opinion goes too far in applying the 1950 amendment to section 101 of the Internal Revenue Act of 1939, and has given its terms a much broader meaning than was intended by the Congress.

Section 101 of the Revenue Act of 1939 listed several types of corporations which were in terms made exempt from the income tax. Among these exempted corporations were the following:

"(6) Corporations, * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * *.

"(14) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this chapter;" [26 U.S.C. § 101 (1952 ed.)]

Prior to 1950, the plaintiff corporation was exempt from such taxation. We have so held. Sico Company v. United States, 102 F.Supp. 197, 121 Ct.Cl. 373.

The majority has concluded that since the 1950 amendment the plaintiff is no longer exempt. The amendment is as follows:

"(b) FEEDER ORGANIZATIONS.—Section 101 is hereby amended by adding at the end thereof the following paragraph:

"An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under any paragraph of this section on the ground that all of its profits are payable to one or more organizations exempt under this section from taxation. For the purposes of this paragraph the term 'trade or business' shall not include the rental by an organization of its real property (including personal

property leased with the real property)." [64 Stat. 906, 953]

The trial commissioner has found as a fact that plaintiff is operated for the primary purpose of carrying on a trade or business for profit. He then finds that all of its net income is subject to taxation, notwithstanding that most of such income for the years involved came from what the statute refers to as passive income and which is not a part of plaintiff's business operation.

We disagree both with this finding of fact and the conclusion reached by the court. The second sentence of paragraph (b) of the 1950 amendment and the Senate Finance Committee report, hereafter discussed, are completely ignored.

We would hold that that part of plaintiff's income which flows from its business operations should be taxed and that the part of the income which consists of rentals, and other income wholly separate from the business and which is entirely devoted to educational purposes should not be taxed.

The plaintiff was organized under Delaware law as a nonstock, charitable and educational organization. It was organized in 1941 as The Sico Company, and the name in 1955 was changed to The Sico Foundation. Mr. Schock, the founder, as a young man had difficulty in trying to secure an education. He determined to use his efforts and his fortune in helping young men secure an education, through scholarships and other forms of aiding young people to accomplish this purpose. Until his death in 1955 he devoted much of his energies and talents toward that end.

It will be noted that the amendment denies exemption to an organization operated for the primary purpose of carrying on a trade or business for profit. The key word is the *purpose* of the organization's operation.

The status of each corporation of this kind depends not only upon the interpretation of the applicable law but also upon the facts. Like human faces, practically no two are exactly alike. What was the purpose of this organization? Let us take a look at the record.

The corporation was organized on December 18, 1941. The most pertinent provisions are set out in finding 6. We quote from paragraph THREE as follows:

"The objects and purposes for which this corporation is formed, and which are proposed to be transacted and carried on, are any and all activities which have for their objects solely the promotion of public educational, literary and scientific purposes, by the appropriation and application of funds and property of this corporation to and for the exclusive benefit of public schools in any state or states of the United States of America, and any political sub-division thereof; provided no part of the net earnings of the corporation shall inure to the benefit of any member, director or individual of this corporation, but said net earnings shall be used exclusively for the charitable purposes hereinabove set forth."

The instrument further provides that the organization may accept gifts, grants, devises or bequests for the objects and purposes described. It further provides that in case of dissolution of the corporation the net assets thereof should be converted into cash and "shall be distributed as follows: one-fourth to the school district in the Borough of Mount Joy and the remaining assets paid over to state teachers colleges." It further provides that "no power of amendment, modification, alteration, or repeal shall be exercised to defeat the objects and purposes for which this corporation is organized."

There is not the slightest doubt that from the time the corporation was organized in 1941 until the amendment was enacted in 1950 the corporation was, in the terms of the statute, an exempt organization. It was so held by the courts and was so interpreted by the Commissioner of Internal Revenue.

There is no question whatever of the original purpose of the organization and its operations prior to 1950. There is no question now unless the 1950 amendment changed the purpose of the organization. How can a later change in the law change the purpose for which a prior organization was formed? The plaintiff stands on an entirely different footing than a corporation organized after the 1950 amendment.

What did the Congress mean to do by the 1950 amendment? Manifestly from the Senate Finance Committee's report, which is set out on page 8 of the slip opinion, 295 F.2d at page 929, they simply meant to tax organizations that had been using their profits tax free to expand operations and also to acquire their businesses with little or no investment. The Senate report further states that the "provisions merely impose the same tax on income derived from an unrelated trade or business as is borne by their competitors. In fact it is not intended that the tax imposed on unrelated business income will have any effect on the tax-exempt status of any organization. *An organization which is exempt prior to the enactment of this bill, if continuing the same activities, would still be exempt after this bill becomes law."* [Italics supplied.] U.S.Code Cong.Service 1950, p. 3081.

If this report stood alone there would be little doubt that since plaintiff organization was exempt at the time the amendment was passed its entire operations would continue to be exempt. However, when this report and law are read in connection with other provisions of law it becomes apparent that the Congress intended thereafter to tax any organization on any income flowing directly from operations conducted primarily for profit. It was clearly meant to stop any unfair advantage in its operations that were in direct conflict with similar commercial concerns which do not enjoy tax exemption in similar operations.

The whole purpose of the amendment therefore can be achieved by levying a tax on the income from the active business operations of The Sico Foundation and treating its passive income, that is, its income from property held for rents and other forms of income and donations, which is wholly unrelated to the business operation, as tax exempt.[1] We would also hold as not tax exempt any passive funds that might have been diverted for the purpose of paying losses on the business operations during the period in question.

The majority opinion states that the "destination of the corporation's income is no longer decisive in determining its right to exemption." We regard the destination as all-important. For any income to be tax exempt it must be devoted exclusively to religious, educational, or charitable purposes. The amendment did not in any sense change this requirement. It simply added the additional requirement that the funds of the organization for which exemption is claimed must not arise from business operations that would thus by virtue of its tax exemption have an advantage over competing commercial companies.

When all of the provisions of the statute, the provisions of the charter, and the nature of the income of the plaintiff organization are laid alongside, it becomes manifest that the interpretation which we have suggested completely meets the terms of the statute and its application would be on all fours with the evident purpose and meaning of the

1. The Senate Finance Committee report in respect to the 1950 amendment also contains the following:

"Dividends, interest, royalties, most rents, capital gains and losses and similar items are excluded from the base of the tax on unrelated income because your committee believes that they are 'passive' in character and are not likely to result in serious competition for taxable businesses having similar income. Moreover, investment-producing incomes of these types have long been recognized as a proper source of revenue for educational and charitable organizations and trusts."

Congress in enacting the 1950 amendment. No other reasonable conclusion can be reached.

The conclusion of the majority, it seems to us, is altogether too technical. Does anyone believe that it was the intention of the Congress that because, forsooth, an organization whose entire purpose was educational and which was entirely exempt at the time of its organization should, because of the amendment in question, be taxed not only on its competing business activities, which was the whole purpose of the amendment, but also upon its passive income, interest, dividends, donations, and rentals from properties wholly unrelated to the business activity?

Here was a man who because of financial difficulties was unable to secure the education which he greatly desired. From the rough hewn paths of his early youth all the way to the end of life's journey, the founder of the plaintiff organization devoted practically all his net income to extending to young men the educational privileges which he had been denied. This is in complete accord with the American dream. An educated citizenship is the only means by which a free people can remain free. No man and no people can maintain their rights unless they understand them. How can they understand them without training and education? An untrained and unlettered people are the natural victims of tyrants and dictators. We cannot believe that it was the intention of the Congress to take away the entire exemption of an organization of this type and thus to discourage the spirit that prompts generous citizens to assist in the processes of education. The facts and circumstances disclosed in the background and record in this case preclude any such conclusion. The wording of the amendment does not require it; the language of the committee report does not compel it; common sense and reason should not so interpret and apply it.

We would grant the motion for rehearing and permit plaintiff to recover the tax on the passive income which was wholly unrelated to the plaintiff's business activities, less any part thereof which may have been diverted to the payment of business losses during the period in question.